TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00204-CV






Charles Hull, Appellant


v.


Abel Dutch Vidaurri, Appellee






FROM THE COUNTY COURT AT LAW NO.2 OF TRAVIS COUNTY

NO. C-1-CV-05-283889, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING




D I S S E N T I N G O P I N I O N



 Integral to our system of justice is reliance upon the fact-finder to resolve disputed
issues of fact. See Jaffe Aircraft Corp. v. Carr, 867 S.W.2d 27, 28 (Tex. 1993). Because the
majority misapplies the standard of review, steps into the shoes of the fact-finder, and substitutes its
own judgment for that of the jury on a question of fact, I respectfully dissent.

 The majority asserts that this case turns on whether Vidaurri exercised due diligence
in serving Hull after the limitations period expired. After considering the evidence and testimony
presented at trial, the jury considered the following question:


 From February 23, 2005 when the petition was filed through September 6, 2005 the
date the petition was served, did Plaintiff Abel Vidaurri exercise due diligence to
have Defendant Charles Hull served with the original petition?[ (1)]

The jury answered this question in the affirmative. 

 On appeal, Hull challenges the legal and factual sufficiency of the evidence to support
the jury's verdict on this issue. When reviewing the jury's findings for legal sufficiency, the supreme
court has instructed that we must view the evidence in the light most favorable to the jury's verdict,
crediting favorable evidence if a reasonable fact-finder could, and disregarding contrary evidence
unless a reasonable fact-finder could not. City of Keller v. Wilson, 168 S.W.3d 802, 807 (Tex.
2005). The test for legal sufficiency is whether the evidence would enable reasonable and
fair-minded people to reach the judgment being reviewed. Id. at 827-28. In conducting a legal
sufficiency review, we presume that the jury made all inferences in favor of their verdict. Id. at 821. 
In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence in the
record, and we may overturn a judgment only if it is so against the great weight and preponderance
of the evidence as to be clearly wrong and manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986); Dyson v. Olin Corp., 692 S.W.2d 456, 457 (Tex. 1985) (citing In re King's Estate,
244 S.W.2d 660, 661 (Tex. 1951)). Further, when reviewing a jury verdict for legal and factual
sufficiency, we must remember that it is the jury--not an appellate court sitting in review of the
jury's verdict--that is the sole judge of the credibility of the witnesses and the weight to be given
their testimony. See Golden Eagle Archery v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003). As the
trier of fact, the jury may resolve inconsistencies in the testimony of the witnesses and may believe
one witness and not another. See McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986).

 When, as here, a defendant raises the defense of limitations and the plaintiff provides
an explanation to justify a delay in service, Texas courts have consistently recognized that the
question of the plaintiff's diligence in effecting service is one of fact for the fact-finder to resolve. 
See Proulx v. Wells, 235 S.W.3d 213, 216 (Tex. 2007) (whether plaintiff's explanation demonstrates
diligence was a fact question for the trier of fact); Webster v. Thomas, 5 S.W.3d 287, 289-90 (Tex.
App.--Houston [14th Dist.] 1999, no pet.); Eichel v. Ullah, 831 S.W.2d 42, 44 (Tex. App.--El Paso
1992, no writ). In assessing diligence, the relevant inquiry is whether the plaintiff acted as an
ordinarily prudent person would have acted under the same or similar circumstances and was
diligent up until the time the defendant was served. Proulx, 235 S.W.3d at 216; see Tate v. Beal,
119 S.W.3d 378, 381 (Tex. App.--Fort Worth 2003, pet. denied). A plaintiff is not required to use
the highest degree of diligence in order to toll the statute of limitations; he need only show that his
actions and efforts to serve the defendant were reasonably diligent. See Proulx, 235 S.W.3d at 216;
see also Martinez v. Becerra, 797 S.W.2d 283, 284-85 (Tex. App.--Corpus Christi 1990, no writ);
Beavers v. Darling, 491 S.W.2d 711, 714 (Tex. Civ. App.--Waco 1973, no writ).

 As set forth in the majority opinion, there was conflicting evidence presented at trial
on the question of due diligence. Barbara Stinnet, the process server hired by Vidaurri, and
Chris Morgan, an attorney who represented Hull on an unrelated matter, testified on behalf of Hull. 
In support of his claim that he exercised due diligence, Vidaurri presented the testimony of
Deborah Foster, a paralegal from the law firm who represented Vidaurri. In addition to these
witnesses, Hull testified that he was in jail at the time Vidaurri filed suit and that he moved to Dallas
upon his release. Hull also testified that, since the accident, he never lived anywhere longer than
six months and that, while in Dallas, he lived with friends in various motels. Hull stated that he
would pay the friends in cash or buy groceries and that he never registered as a motel guest. Hull
also testified that he had worked at various restaurants in the Dallas area, but none for longer than
a few months.

 Based on the testimony of Morgan and Stinnet, the majority finds that there is a
four-month gap--between March 29, 2005, and August 1, 2005--in Vidaurri's explanation of his
efforts to serve Hull. In so doing, the majority substitutes its own judgment for that of the jury and
all but ignores the record evidence favorable to the jury's finding of due diligence. (2) But contrary to
the majority's opinion, the record demonstrates there was no four-month gap in Vidaurri's efforts
to locate and serve Hull. Morgan testified that, after his conversation with Vidaurri's attorney in
March 2005, he received three phone calls inquiring about serving Hull and that those calls were
received "in the intervening time" during "the summer of 2005"--i.e., during the alleged four-month
gap as found by the majority. Based on this undisputed testimony, the jury could have rationally
inferred that there were no unexplained gaps in Viduarri's efforts to locate and serve Hull. (3)

 In addition, Foster testified that the law firm tried to call Hull several times and that
the firm's in-house investigator tried unsuccessfully to track down Hull by looking for a paper trail
and trying to find an address for Hull based on his cell phone number. Foster stated that she
discovered later that Hull "had like five different addresses at the time and that one of them was in
jail." Foster also testified that the law firm's in-house investigator ran "auto track" searches to try
and locate Hull and that the "auto track system is usually pretty decent at helping us track people
down," but "[w]e just weren't getting any results there." Based on this evidence, I would conclude
that whether Vidaurri exercised due diligence in trying to locate and serve Hull was a question of
fact for the jury, not this Court, to resolve. See Proulx, 235 S.W.3d at 216 (holding question of
plaintiff's diligence in effecting service is generally one of fact); see also Elam v. Armstrong,
No. 03-07-00565-CV, 2008 Tex. App. LEXIS 6227, at *9-11 (Tex. App.--Austin Aug. 14, 2008,
no pet.) (mem. op., not designated for publication) (finding question of due diligence was question
of fact that defeated summary judgment despite plaintiff's inability to state frequency or extent of
internet searches for defendant); Lawrence v. GEICO Gen. Ins. Co., No. 01-07-00873, 2009 Tex.
App. LEXIS 5082, at *9-11 (Tex. App.--Houston [1st Dist.] July 2, 2009, no pet.) (mem. op., not
designated for publication) (affirming trial court's finding of due diligence based on lawyer's
testimony that "not a single month . . . passed that something wasn't being done").

 The majority, however, faults Foster for not "provid[ing] any dates or further details
for any of these actions" and for testifying inconsistently about which attorneys at the law firm were
actively trying to serve Hull. But the record is clear that the law firm's in-house investigator was
conducting auto track searches during the alleged four-month gap identified by the majority, and the
jury could have inferred from Foster's testimony that Stinnet was not the only person working on
trying to locate and serve Hull and that the law firm's in-house investigator was actively attempting
to locate Hull during the time that Stinnet was not. See City of Keller, 168 S.W.2d at 821
(presuming that jury drew all inferences in favor of its verdict).

 In addition, when considering whether Vidaurri was diligent in his efforts to serve
Hull, the majority refuses to acknowledge Hull's own testimony, which detailed his many changes
of address during the relevant time period and his lack of a permanent job. Cf. Proulx, 235 S.W.3d
at 217 (considering evidence that defendant was actively avoiding service in determining whether
plaintiff exercised due diligence); Martinez, 797 S.W.2d at 285 (finding that defendant's multiple
changes of address and attempts to avoid service "weigh heavily in favor of finding due diligence"). 
Coupled with Foster's testimony that Hull "had like five different addresses at the time and that one
of them was in jail," the jury could have inferred from Hull's testimony that he was actively avoiding
service or, at a minimum, was attempting to conceal his whereabouts. See City of Keller,
168 S.W.2d at 821; see also Martinez, 797 S.W.2d at 285 (finding that concealment weighs heavily
in favor of finding due diligence); Beavers, 491 S.W.2d at 714 ("we cannot say as a matter of law
that Plaintiff-Appellant failed to exercise due diligence" in effecting service where attempts
at service were thwarted because defendant moved and changed jobs without leaving
forwarding information).

 Relying on Ashley v. Hawkins, 293 S.W.3d 175, 179 (Tex. 2009), the majority
concludes that Viduarri's explanation of his efforts to serve Hull failed to demonstrate due diligence
as a matter of law. In that case, the court found multiple unexplained gaps of eight months and
two months in the plaintiff's efforts to serve the defendant. Id. at 180 & n.6. The record also
showed that, despite having located the defendant in California, it took the plaintiff almost
two months to accomplish service. Id. at 180 n.6. While a two-month delay would not amount to
a lack of due diligence as a matter of law in most circumstances, the supreme court explained that
this gap, coupled with an earlier unexplained gap of five months, amounted to a lack of due diligence
as a matter of law. Id. In contrast, the undisputed testimony here shows no unexplained gaps in
Viduarri's efforts to serve Hull. More importantly, there is no evidence that Viduarri knew of Hull's
whereabouts prior to accomplishing substituted service. The majority's reliance on Ashley is
therefore inapposite.

 Based on the evidence in the record before us and viewing this evidence in the light
most favorable to the verdict, I would conclude that a reasonable jury could have found that Vidaurri
acted as a reasonably prudent person would have acted and that Vidaurri acted diligently until Hull
was served. Although the majority finds that the issue of due diligence in this case is a question of
law, it is clear from the state of the record before us that the majority instead has chosen simply to
disregard the jury's verdict, step into the shoes of the fact-finder, and re-weigh the evidence in favor
of Hull. Because the majority has effectively usurped the role of the jury and has substituted its
judgment for that of the jury on a question of fact well within the jury's province to resolve, I
respectfully dissent.




 __________________________________________

 Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Pemberton

Filed: January 22, 2010
1. The charge defined the term "due diligence" as "that standard of diligence to procure
service which an ordinarily prudent person would have used under the same or similar
circumstances. The duty to exercise due diligence in service of process of the Original Petition is
a continuous one beginning on the date suit is filed until the petition is served."
2. It is not surprising that the majority relies heavily on the testimony of Morgan and Stinnet
to support its conclusion that Viduarri did not exercise due diligence because these were the two
witnesses who testified at trial in support of Hull's claim that there was a lack of due diligence. But
even if one accepts the testimony of Morgan and Stinnet as true, there is sufficient evidence to
support the jury's verdict of due diligence. That the majority refuses to view the evidence in the light
most favorable to this verdict demonstrates the majority's complete failure to apply the proper
standard of review.
3. The majority's reliance on the "equal inference rule" to discredit the jury's verdict is
misguided. While the equal inference rule does not allow a jury to infer either of two facts where
circumstances are equally consistent with both facts, see City of Keller v. Wilson, 168 S.W.3d 802,
813 (Tex. 2005), that rule is inapplicable here. Morgan's testimony was undisputed that he received
three phone calls in "the summer of 2005" inquiring about serving Hull. This testimony is clear that
Morgan received the phone calls during the alleged four-month gap as found by the majority. The
jury was therefore entitled to infer that these calls related to Viduarri's efforts to serve Hull during
the relevant time period.